IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON L. NUSSER, formerly known as SHARON L. VINCI, <br><br> Plaintiff, <br><br> v. <br><br> TOWNSHIP OF HANOVER, <br> SAMUEL EATON, in his individual capacity, <br> GEORGE ROBERTS, in his individual capacity, <br> and STEVEN ZALUSKI, in his individual capacity, <br><br> Defendants. | Civil Action No. 20-1587 |

**MEMORANDUM OPINION**

I. **INTRODUCTION**

Plaintiff Sharon L. Nusser, formerly known as Sharon L. Vinci, alleges a claim under 42 U.S.C. § 1983 for First Amendment retaliation against Defendants Township of Hanover (the "Township") and Samuel Eaton, George Roberts and Steven Zaluski (the "Individual Defendants"). (*See* Docket No. 1, ¶¶ 32-43). Plaintiff also asserts a wrongful discharge claim against the Township. (*See id.*, ¶¶ 44-48). Presently before the Court is Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), which is opposed by Plaintiff. (Docket Nos. 11-13). After careful consideration of the parties' arguments in light of the prevailing legal standards, Defendants' Motion will be granted. Plaintiff's claim at Count One as against the Township and the Individual Defendant will be dismissed without prejudice to amendment to the extent Plaintiff is able to state a plausible claim for relief as more specifically discussed herein, and

the claim at Count Two against the Township will be dismissed with prejudice.

## II. BACKGROUND

According to Plaintiff's Complaint, she began working for the Township as the Secretary/Treasurer on April 1, 2008, and she also performed the responsibilities of Township Manager. (Docket No. 1, ¶¶ 10, 11). Defendants Eaton, Roberts and Zaluski have been Supervisors of the Township since January 2018, January 2019 and January 2020, respectively. (*Id.*, ¶¶ 5-7). Defendant Roberts is Chairman of the Board of Supervisors. (*Id.*, ¶ 15).

Beginning in March 2020, Plaintiff alleges that Defendant Roberts created a sexually hostile work environment by: telling Plaintiff that she should jump up and down to make her breasts shake in front of him; repeatedly asking Plaintiff to meet him for drinks; stating that he was changing the dress code so that women would be required to wear "a uniform" of skirts to work; making sexual comments about Plaintiff's body when she wore a skirt to work; and expressing his bias against gay men, knowing that Plaintiff has a family member who is gay. (Docket No. 1, ¶¶ 15, 16). Plaintiff allegedly rebuffed Defendant Roberts' sexual advances and expressed her offense regarding his comments about gay men. (*Id.*, ¶ 17).

Plaintiff further alleges that, in late July 2020, Defendant Roberts threatened to fire her if she did not agree to testify in support of various unfounded complaints he made, or planned to make, against the Pennsylvania State Police for not investigating alleged misconduct by Township employees. (Docket No. 1, ¶ 18). Plaintiff told Defendant Roberts that she would not do so, and she also told Defendant Zaluski that she would not testify as Roberts had instructed her. (*Id.*, ¶¶ 20, 23, 24).

As alleged in the Complaint, Defendant Eaton advised Plaintiff on September 13, 2020, that she was suspended until further notice, and he subsequently informed her on September 24,

2020 that she was terminated. (Docket No. 1, ¶¶ 26, 30). Plaintiff asserts that she was terminated because she engaged in constitutionally protected conduct by expressing her refusal to engage in sexual conduct with Defendant Roberts and by conveying her refusal to provide untruthful or inaccurate testimony in support of his unfounded complaints against the Pennsylvania State Police. (*Id.*, ¶¶ 25, 33, 35, 45). Plaintiff alleges that these are matters of public concern. (*Id.*, ¶ 34).

As stated, Plaintiff asserts a claim at Count One against the Township and the Individual Defendants under 42 U.S.C. § 1983 for First Amendment retaliation, alleging that Defendants suspended and subsequently terminated her after she exercised her right of free speech under the First Amendment. (Docket No. 1, ¶¶ 32-43). At Count Two, she asserts a wrongful discharge claim under Pennsylvania law against the Township. (*Id.*, ¶¶ 44-48).

Defendants have moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and Plaintiff filed a Response opposing Defendants' Motion. (Docket Nos. 11, 13). The matter is now ripe for disposition.

### III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the well-pleaded factual content in the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and also "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). When analyzing a motion to dismiss, the factual allegations should be separated from allegations that merely recite the legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The well-pleaded facts are accepted as true, but legal conclusions may be disregarded. *Id.* at 210-11. Next, a

determination is made as to "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

IV.     **DISCUSSION**

   A.  **Section 1983 Claim - First Amendment Retaliation**

As an initial matter, 42 U.S.C. § 1983 does not create any substantive rights, but rather provides a remedy for deprivations of rights created by the Constitution or federal law. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). "To state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). In Count One, Plaintiff asserts a § 1983 claim for First Amendment retaliation against all Defendants, alleging that she was suspended and subsequently terminated because she exercised her First Amendment right of free speech by refusing to engage in sexual conduct with Defendant Roberts and further refusing to provide untruthful or inaccurate testimony. (Docket No. 1, ¶¶ 33, 35, 36).

Defendants argue that Plaintiff's First Amendment retaliation claim should be dismissed because she did not engage in public speech. (*See* Docket No. 12 at 3-6). Although Defendants acknowledge that issues involving alleged sexual harassment and lying under oath can be matters of public concern, they maintain that Plaintiff's protests in this case were personal grievances related to her own employment, not an expression of opposition to the Township's policies and practices. (*Id.* at 6). Plaintiff counters that her speech on both matters is

protected because it addresses matters of public concern by attempting to expose "specific wrongs and abuses within the government." (Docket No. 13 at 6) (citations omitted).

### 1. First Amendment Retaliation – Defendant Township

Plaintiff's First Amendment retaliation claim pursuant to § 1983 is asserted against "All Defendants" in Count One of the Complaint. (*See* Docket No. 1 at 5). Although not raised by Defendants in their moving papers, the Court finds that Plaintiff has failed to plausibly allege such a § 1983 against the Township.[1]

As Plaintiff avers, the Township is a "municipal employer" located in Hookstown, Pennsylvania. (Docket No. 1, ¶ 4). This Court recently explained what a plaintiff must allege to state a plausible § 1983 claim against a municipality:

> To hold the City, a municipality, liable for violations under Section 1983, Plaintiffs must allege more than violations of their rights by a City employee; Plaintiffs must also sufficiently plead that those alleged violations are attributable to the City. " '[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.' " *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 197-98 (3d Cir. 2018) (quoting *Monell*, 436 U.S. at 691). Thus, the alleged violation of rights must have been caused by actions that were taken pursuant to a municipal "policy" or "custom." *See id.* at 198 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003)); s*ee also Monell*, 436 U.S. at 690-94. "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.' "[2] *Natale*, 318 F.3d at 584 (quoting

---

[1] A district court "has the power to dismiss claims *sua sponte* under Rule 12(b)(6)." *Bintliff-Ritchie v. American Reinsurance Co.*, 285 F. App'x 940, 943 (3d Cir. 2008) (citing *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) (holding that a "district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action")); *see also Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 655 (E.D. Pa. 2020) (observing that a district court may *sua sponte* dismiss a complaint or claims therein "provided that the complaint affords a sufficient basis for the court's action") (quoting *Bryson*, 621 F.2d at 559); *Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp. 2d 413, 428 n.14 (W.D. Pa. 2008) ("[A] court may dismiss claims *sua sponte* where the inadequacy of a claim is apparent as a matter of law.") (citation omitted)).

[2] "Acts by a government employee may be deemed to be the result of a policy of the entity for whom the employee works in three situations: (1) where the individual acted pursuant to a formal policy; (2) where the individual himself has final policy-making authority so his conduct represents official policy; or (3) where a final policymaker renders the individual's conduct official for liability purposes by having delegated to him authority to act

*Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)).  A "custom," on the other hand, involves "practices of state officials . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Monell*, 436 U.S. at 691.

*Blessing v. City of Latrobe*, Civ. No. 20-1212, 2022 WL 114077, at *10 (W.D. Pa. Jan. 12, 2022).

Contrary to this standard, Plaintiff alleges only that actions by the Individual Defendants, primarily Defendant Roberts, violated her right of free speech under the First Amendment.  (*See* Docket No. 1, ¶¶ 15, 16, 18, 19, 26, 30, 31).  Plaintiff's Complaint contains no allegations that a Township policy or custom caused the alleged constitutional violation.  Accordingly, Count One will be dismissed without prejudice to amendment by Plaintiff to the extent she is able to plausibly allege a claim under 42 U.S.C. § 1983 for First Amendment retaliation against the Township.[3]

### 2. First Amendment Retaliation - The Individual Defendants

Plaintiff offers two allegedly protected activities that she claims led the Individual Defendants to retaliate against her: (1) expressing her refusal to engage in sexual conduct with Defendant Roberts; and (2) conveying to Defendant Roberts her refusal to provide untruthful or inaccurate testimony.  (Docket No. 1, ¶ 33).  In response to her protected activity, Plaintiff alleges that the Individual Defendants retaliated against her by suspending and subsequently terminating her.  (*Id.*, ¶ 35).  With this background, the Court considers whether Plaintiff has stated a plausible First Amendment retaliation claims against the Individual Defendants.

---

or speak for the government."  *Blessing*, 2022 WL 114077, at *10 (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006); *Jones v. Pittston Area Sch. Dist.*, No. 18-1919, 2021 WL 3673840, at *5 (M.D. Pa. Aug. 18, 2021)).

3       If a civil rights complaint is vulnerable to dismissal, the district court must permit a curative amendment, unless amendment would be inequitable or futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  This directive equally applies to *pro se* plaintiffs and those represented by counsel.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

a. **Relevant Law**

Plaintiff was a public employee when she experienced the alleged First Amendment retaliation. (*See* Docket No. 1, ¶¶ 10, 11) (alleging that Plaintiff worked as Secretary/Treasurer for the Township and also performed responsibilities of Township Manager)). A public employee who seeks to state a First Amendment retaliation claim must sufficiently allege that "(1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred." *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014) (citing *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009)); *see also Falco v. Zimmer*, 767 F. App'x 288, 298-99 (3d Cir. 2019) (clarifying the correct articulation of elements where a public employee brings a First Amendment retaliation claim).[4]

As to the first element, a public employee's speech is protected by the First Amendment "when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill*, 455 F.3d at 241-42 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

---

4   In *Falco*, the Third Circuit Court of Appeals clarified that *Dougherty's* articulation of the elements applies where a public employee brings a First Amendment retaliation claim. *Falco*, 767 F. App'x at 298-99 (citing *Dougherty* and other Third Circuit cases applying same formulation to a public employee's case). Where a private citizen brings a First Amendment retaliation claim against a government entity and its employees, a slightly different formulation of elements applies, and a plaintiff must allege that (1) he engaged in protected activity, (2) the defendant's retaliatory action was sufficient to deter a person of ordinary firmness from exercising his right, and (3) a causal connection exists between the protected activity and the retaliatory action. *Id.* at 298 (citing *Lauren W. ex rel. Jean. W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Turning to the factors which comprise the first element, initially, for a public employee's speech to be protected by the First Amendment, he must have spoken as a citizen, meaning that his speech must not have been undertaken pursuant to his job responsibilities as a public employee. *See Garcetti*, 547 U.S. at 421-22. As the Supreme Court has explained, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. However, if "the public employee's speech is not part of his ordinary job duties or is uttered as sworn testimony in a judicial proceeding,[5] then the employee is acting as a private citizen and his speech hence may or may not be protected under the First Amendment," depending on whether the speech involved a matter of public concern or private concern. *Falco*, 767 F. App'x at 302.

Relative to the second factor, a public employee's speech involving matters of public concern are protected under the First Amendment, whereas speech involving matters of private concern are not protected. *Falco*, 767 F. App'x at 302 (citing *DeRitis v. McGarrigle*, 861 F.3d 444, 454-55 (3d Cir. 2017)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). Speech involves matters of public concern "when it can 'be fairly considered as relating to any matter of political,

---

5     The Third Circuit Court of Appeals has held that "when testifying truthfully in court proceedings, a public employee speaks as a citizen, even if the court testimony stems from the employee's official duties in an investigation." *Falco*, 767 F. App'x at 301 (citing *Reilly v. City of Atlantic City*, 532 F.3d 216, 231 (3d Cir. 2008) ("[T]he act of offering truthful testimony is the responsibility of every citizen, and the First Amendment protection associated with fulfilling that duty of citizenship is not vitiated by one's status as a public employee. That an employee's official responsibilities provided the initial impetus to appear in court is immaterial to his/her independent obligation as a citizen to testify truthfully.")). Subsequently, in *Lane v. Franks*, the Supreme Court held that "[t]ruthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes, . . . even when the testimony relates to his public employment or concerns information learned during that employment." 573 U.S. 228, 238 (2014).

social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.' " *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citations omitted). Conversely, "speech that relates solely to mundane employment grievances does not implicate a matter of public concern." *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 467 (3d Cir. 2015). As the Third Circuit Court of Appeals has summarized, jurisprudence in this area indicates that "speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not." *Falco*, 767 F. App'x at 303 (quoting *Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1271 (3d Cir. 1994)).

If a public employee speaks as a private citizen on a matter addressing a public concern, the speech may be protected under the First Amendment, depending on whether or not the public employer had an adequate justification for treating the employee differently from any other member of the general public, which is the third factor in the analysis. *Hill*, 455 F.3d at 241-42 (citing *Garcetti*, 547 U.S. at 418). At this step, "courts balance 'the public employee's interest in speaking about a matter of public concern and the value to the community of [his] being free to speak on such matters' against 'the government's interest as an employer in promoting the efficiency of the services it performs through its employees.' " *Falco*, 767 F. App'x at 303-04 (quoting *Azzaro v. County of Allegheny*, 110 F.3d 968, 980 (3d Cir. 1997)). "If the public employer's interest is 'significantly greater' than the public employee's interest in contributing to public debate, then the public employee's speech is not protected." *Id.* at 304 (citing *DeRitis*, 861 F.3d at 456-57).

If a public employee establishes that he engaged in some protected speech for purposes of stating a First Amendment retaliation claim, he must next plausibly allege that the speech was a substantial or motivating factor in the public employer's alleged retaliatory action. *See*

9

*Dougherty*, 772 F.3d at 986. "To do so, he must show some sort of 'causal link' between the protected speech and the adverse employment action." *Falco*, 767 F. App'x at 310 (citing *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003)). "[A]t [the] motion to dismiss stage, [a plaintiff] must only produce some evidence, direct or circumstantial, of this element that is 'enough to raise the right to relief above the speculative level.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

"[F]or protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Falco*, 767 F. App'x at 310 (quoting *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002)). If a plaintiff plausibly alleges that the decisionmakers were aware of the protected conduct, then "a suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation. . . ." *Id.* (quoting *Thomas*, 351 F.3d at 114). However, "[e]ven if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Id.* at 310-11 (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)).

Finally, if a public employee plausibly alleges that his speech is protected by the First Amendment and the speech was a substantial or motivating factor in the alleged retaliatory action, the burden shifts to the public employer to establish that it would have taken the same action even if the speech had not occurred, which is the third element of a First Amendment retaliation claim. *See Dougherty*, 772 F.3d at 986.

In light of these prevailing legal standards, the Court finds that Plaintiff has failed to state a plausible First Amendment retaliation claim premised on either of the two allegedly protected activities that she claims led the Individual Defendants to retaliate against her.

### b. Refusing to Engage in Sexual Conduct

To repeat, Plaintiff claims that the Individual Defendants suspended and subsequently terminated her after she refused to engage in sexual conduct with Defendant Roberts. (Docket No. 1, ¶¶ 33, 35). Defendants argue that Plaintiff's First Amendment retaliation claim premised on this basis fails because she did not engage in public speech. (*See* Docket No. 12 at 3-6). Although Defendants acknowledge that speech concerning alleged sexual harassment can be a matter of public concern, they assert that Plaintiff's protest in this case was a personal grievance related to her own employment. (*Id.* at 6).

In *Azzaro*, the Third Circuit Court of Appeals addressed whether a public employee's speech regarding sexual harassment can constitute protected speech. The plaintiff, a former Allegheny County employee, was fired after reporting that she was sexually harassed by an executive assistant to the County Commissioner. *Azzaro*, 110 F.3d at 970. The plaintiff subsequently sued Allegheny County and two County employees, alleging, *inter alia*, retaliation for speech protected by the First Amendment, in violation of § 1983. *Id.* at 975. The Court of Appeals explained that the key to the "public concern" inquiry is "whether expression of the kind at issue is of value to the process of self-governance" and reasoned that gender discrimination, "when practiced by those exercising authority in the name of a public official, is as much a matter of public concern as racial discrimination practiced under similar circumstances." *Id.* at 977, 978. The *Azzaro* court was careful to clarify, however, that not "all public employee complaints about sexual harassment are matters of public concern," and that examination of "all of the surrounding circumstances" is required when making such a determination. *Id.* at 980. A circumstance that weighed in favor of finding that the communication in *Azzaro* involved a matter of public concern was that the alleged harassment "brought to light actual wrongdoing on

the part of one exercising public authority that would be relevant to the electorate's evaluation of the performance of the office of an elected official."  *Id.* at 978.

Pursuant to *Azzaro*, if Plaintiff complained or reported that Defendant Roberts sexually harassed her, her speech may be a matter of public concern because it may be "of value to the process of self-governance" in that it may "[bring] to light actual wrongdoing on the part of one exercising public authority that would be relevant to the electorate's evaluation of the performance of the office of an elected official."  *Azzaro*, 110 F.3d at 977, 978.  Nevertheless, construing the Complaint's allegations in the light most favorable to Plaintiff and assuming that her speech related to Defendant Robert's alleged sexual harassment is a matter of public concern, Plaintiff has failed to plausibly allege that any such protected speech was a substantial or motivating factor in the Individual Defendants' alleged retaliation, which is the second element of a First Amendment retaliation claim.  *See Dougherty*, 772 F.3d at 986.

Despite claiming in her briefing papers that "she engaged in protected speech by protesting and reporting sexual harassment" by Defendant Roberts, (Docket No. 13 at 6), Plaintiff's Complaint fails to plausibly allege same.  To be precise, Plaintiff alleges that she "rebuffed [Roberts'] sexual advances" and "expressed her refusal to engage in sexual conduct with [him]."  (Docket No. 1, ¶¶ 25, 33).  Although these allegations describe a situation where Plaintiff rebuffed and/or refused Defendant Roberts' advances, the Complaint contains no allegations that Plaintiff verbally reported Roberts' behavior to Defendants Eaton and/or Zaluski (or any other Township officials) or that she lodged a written complaint on the matter that was brought to their attention.  As explained, "for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct."  *Falco*, 767 F. App'x at 310 (quoting *Ambrose*, 303 F.3d at 493).  Consequently, for Plaintiff's

speech refusing to engage in sexual conduct with Defendant Roberts to have been a substantial or motivating factor in the decisions to suspend and terminate her, the Complaint must plausibly allege that the individuals involved in those decisions were aware of her protected speech. To reiterate, the Complaint contains no allegations that anyone other than Defendant Roberts was aware that she "rebuffed" his sexual advances or "refused" to engage in sexual conduct with him. Given this deficiency, Plaintiff's First Amendment retaliation claim premised on alleged sexual harassment will be dismissed without prejudice to amendment to the extent that she is able to state a plausible claim on this basis against the Individual Defendants.

### c. Refusing to Provide Untruthful Testimony

Plaintiff also claims that the Individual Defendants suspended and subsequently terminated her after she conveyed to Defendant Roberts her refusal to provide untruthful testimony in support of various unfounded complaints he made, or planned to make, against the Pennsylvania State Police. (Docket No. 1, ¶¶ 18, 25, 33, 35). Here again, Defendants acknowledge that speech concerning such an issue can be a matter of public concern, but Plaintiff's protest in this case was a personal grievance related to her own employment, and not an expression against Township practices. (Docket No. 12 at 6).

The Court need not address whether Plaintiff's refusal to provide untruthful testimony is a matter of public concern because, initially, the Complaint does not plausibly allege that Plaintiff spoke as a citizen on the matter. *See Garcetti*, 547 U.S. at 418; *Hill*, 455 F.3d at 241. As explained, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. However, if "the public employee's speech is not part of his ordinary job duties or is uttered as

sworn testimony in a judicial proceeding, then the employee is acting as a private citizen and his speech hence may or may not be protected under the First Amendment" depending on whether it is a matter of public concern. *Falco*, 767 F. App'x at 302.

Here, Plaintiff has not adequately and plausibly alleged that she spoke as a citizen when she conveyed to Defendant Roberts her refusal to provide untruthful testimony, despite her broad assertion that she did so. (Docket No. 1, ¶ 33). First, the Complaint does not allege that Plaintiff's testimony was requested or actually given in connection with a judicial proceeding or some other type of administrative hearing. *See Falco*, 767 F. App'x at 302 (explaining that an employee acts as a private citizen when her speech is "uttered as sworn testimony in a judicial proceeding"); *Southerton v. Borough of Honesdale*, No. 3:17-CV-00165, 2018 WL 5810269, at *5 (M.D. Pa. Nov. 6, 2018) (distinguishing between an employee's testimony in a public courtroom, which is protected as citizen speech, and testimony in a private grievance arbitration, which is not necessarily protected speech). Additionally, the Complaint contains no allegations describing Plaintiff's job duties, therefore making it impossible to ascertain whether her alleged refusal to provide untruthful testimony was made pursuant to her official duties. *See DeRitis*, 861 F.3d at 454 (Though "speech may be protected even if it concerns information related to or learned through public employment, an employee does not speak as a citizen if the mode and manner of his speech were possible only as an ordinary corollary to his position as a government employee.") (internal quotations and citations omitted); *Giangrieco v. Susquehanna County*, No. 3:20-cv-817, 2020 WL 6047561, at *4 (M.D. Pa. Oct. 13, 2020) (plaintiff's speech was not protected where complaint did not allege that he was acting as a witness when he allegedly refused to lie in documents in response to EEOC complaint, but rather reflected that he was acting pursuant to his role as county solicitor). Because Plaintiff's Complaint does not

14

plausibly allege that she spoke as a citizen when she told Defendant Roberts that she would not provide untruthful testimony in support of his unfounded complaints against the Pennsylvania State Police, her First Amendment retaliation claim on this basis against the Individual Defendants will be dismissed without prejudice to amendment.

### B. Wrongful Discharge

At Count Two of the Complaint, Plaintiff asserts that her suspension and discharge by the Township for allegedly protesting sexual harassment and refusing to provide untruthful testimony constitutes a wrongful discharge. (Docket No. 1, ¶¶ 44-48). Despite alleging in Count Two that she was wrongfully discharged for protesting both matters, (*see id.*, ¶ 45), Plaintiff submits in her briefing that she was wrongfully discharged only because she would not agree to provide untruthful testimony. (*See* Docket No. 13 at 10) (stating Plaintiff "has not claimed that she was wrongfully discharged for protesting Defendant Roberts' sexual harassment[] . . . [but rather] because she would not agree to provide false testimony to state law enforcement.")). Plaintiff maintains that her termination for supposedly refusing to provide untruthful testimony violates Pennsylvania public policy. (*Id.* at 8). According to the Township, Plaintiff's assertion that she was terminated for refusing to provide untruthful testimony does not fall within an exception to the employment at-will doctrine as a violation of a clear mandate of public policy. (Docket No. 12 at 7).

Although not raised in Defendants' moving papers, Plaintiff's wrongful discharge claim against the Township is barred by the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 PA. CONS. STAT. ANN. § 8541, *et seq.*,[6] which grants municipalities, municipal

---

[6] As already discussed in footnote 1, a district court "has the power to dismiss claims *sua sponte* under Rule 12(b)(6)." *Bintliff-Ritchie*, 285 F. App'x at 943. Relevant here, dismissal is appropriate where a defendant is

agencies, and municipal officers acting in their official capacity immunity from liability for all state law tort claims.[7] An injured party may recover in limited circumstances, including where the negligent act of the local agency falls within one of eight enumerated categories of exceptions to immunity.[8]  *Id.*, § 8542(a); *see also Lindstrom v. City of Corry*, 763 A.2d 394, 397 (Pa. 2000). Notably, a common law action for wrongful discharge in Pennsylvania is not an exception to the PPSTCA. *See Cucchi v. Kagel*, Civ. No. 17-01597, 2018 WL 1141255, at *6 (E.D. Pa. Mar. 2, 2018) (holding that wrongful discharge claim is barred by PPSTCA) (citing *Haiden*, 2009 WL 2341922, at *3 (same); *Kranch v. Tamaqua Area Sch. Dist.*, No. 3:08-cv-83, 2009 WL 4795563, at *8-9 (M.D. Pa. Dec. 7, 2009) (same)). Consequently, Plaintiff's wrongful discharge claim against the Township will be dismissed with prejudice, given that the Township is immune from suit for such a claim under the PPSTCA.

---

entitled to immunity pursuant to the PPSTCA. *See Great Northern Ins. Co. v. Whipple-Allen Real Estate*, No. 18-41 Erie, 2018 WL 3618689, at *5 (W.D. Pa. July 30, 2018) (observing that "district courts routinely grant motions to dismiss in this district on the basis of immunity under the Tort Claims Act") (citations omitted)).

7   According to the PPSTCA, "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT. ANN. § 8541. A "local agency" is defined as "[a] government unit other than the Commonwealth government. The term includes, but is not limited to, an intermediate unit; municipalities cooperating in the exercise or performance of governmental functions, powers or responsibilities under 53 Pa.C.S. Ch. 23 Subch. A (relating to intergovernmental cooperation); and councils of government and other entities created by two or more municipalities under 53 Pa. C.S. Ch. 23 Subch. A." *Id.*, § 8501. Here, the Township is a local agency, and therefore is subject to the provisions of the PPSTCA. *See Osborne v. Cambridge Twp.*, 736 A.2d 715, 720 (Pa. Commw. Ct. 1999) (a township is a local agency subject to provisions of PPSTCA); *Deluca v. Whitemarsh Twp.*, 526 A.2d 456, 457 n.3 (Pa. Commw. Ct. 1987) (same).

8   The eight exceptions are for: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. *See* 42 PA. CONS. STAT. ANN. § 8542(b). Additionally, the PPSTCA contains one more exception, found in § 8550, which provides that "where a municipal employee's actions amount to actual malice or willful misconduct, the immunity provisions of the Pennsylvania Political Subdivisions Tort Claims Act shall not apply." *Gonzalez v. City of Bethlehem*, No. 93-1445, 1993 WL 276977, at *4 (E.D. Pa. July 13, 1993). However, § 8550 applies only to remove the immunity of individuals. *See* 42 PA. CONS. STAT. ANN. § 8550 ("willful misconduct" eliminates individual immunity at §§ 8545, 8546, 8548, and 8549, but not agency immunity at § 8541); *Haiden v. Greene County Career & Tech. Ctr.*, No. 08-1481, 2009 WL 2341922, at *3 (W.D. Pa. July 27, 2009) ("The 'willful misconduct' exception to immunity under the PPSTCA directly relates to employees of local agencies, and does not create an exception to immunity for the agency itself.") (citations omitted)).

## V. CONCLUSION

For reasons set forth herein, Defendants' Motion to Dismiss, (Docket No. 11), is granted. Plaintiff's claim at Count One as against the Township and the Individual Defendant is dismissed without prejudice to amendment to the extent she is able to state a plausible § 1983 claim for First Amendment retaliation, and her claim at Count Two against the Township for wrongful discharge is dismissed with prejudice.

An appropriate order follows.

<u>s/ W. Scott Hardy</u><br>
W. Scott Hardy<br>
United States District Judge

Date:   March 3, 2022

cc/ecf:   All counsel of record